**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1374**

WILLIAM T. HANCOCK, SR., individually and in a representative capacity on behalf of a class of all persons similarly situated,

Plaintiff - Appellant,

v.

AMERICO FINANCIAL LIFE AND ANNUITY INSURANCE COMPANY; INVESTORS LIFE INSURANCE COMPANY OF NORTH AMERICA; AMERICO LIFE, INC.,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Louise W. Flanagan, District Judge. (7:16-cv-00350-FL)

Submitted: December 30, 2019                Decided: February 5, 2020

Before MOTZ, DIAZ, and THACKER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

H. Forest Horne, Jr., John Alan Jones, MARTIN & JONES, PLLC, Raleigh, North Carolina; Mark R. Sigmon, SIGMON LAW, PLLC, Raleigh, North Carolina, for Appellant. Debbie W. Harden, Matthew F. Tilley, WOMBLE BOND DICKINSON (US) LLP, Charlotte, North Carolina; Roger B. Cowie, Carl C. Scherz, Taylor F. Brinkman, LOCKE LORD LLP, Dallas, Texas, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 1985, William T. Hancock, Sr., purchased a flexible premium adjustable life insurance policy from Americo Financial Life and Annuity Insurance Company, Investors Life Insurance Company of North America, and Americo Life, Inc. (collectively, "Defendants"). The policy provided for a $50,000 death benefit if Hancock died before the date of maturity, which was his 95th birthday. If Hancock was alive on the date of maturity, he would receive the cash value of the policy. The policy also provided for an initial minimum premium of $41.27 per month and a "planned periodic premium" in that same amount. Hancock alleges that, although he paid $41.27 per month for more than 25 years, Defendants later increased the amount of his monthly premiums and depleted the cash value of the policy to cover the difference between the initial minimal premium and the increased monthly premium, depriving Hancock both of the cash value and the promised death benefit unless he began to pay higher monthly premiums. Hancock appeals the district court's order dismissing for failure to state a claim his amended putative class action complaint in which he asserts claims under North Carolina law for breach of contract, breach of the duty of good faith and fair dealing, declaratory and injunctive relief, equitable rescission, and violation of the Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen Stat. Ann. § 75-1.1 (2017). We affirm.

"We review de novo the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6)," and must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). "To survive a motion to

2

dismiss, [Hancock's] factual allegations, taken as true, must state a claim to relief that is plausible on its face. The plausibility standard is not a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations and internal quotation marks omitted).

Under North Carolina law, insurance policies are contracts that courts must interpret as they are written. *Digh v. Nationwide Mut. Fire Ins. Co.*, 654 S.E.2d 37, 39 (N.C. Ct. App. 2007). In the absence of ambiguity, courts should construe insurance policies "by the plain, ordinary, and accepted meaning of the language used. An ambiguity exists where, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Id.* (citations and internal quotation marks omitted). Courts must construe any ambiguities against the insurance company as the drafting party. *Id.*

Hancock asserts that the policy could be reasonably interpreted to provide that the amount of the monthly premium could only be changed by the policyholder, and, as a result, coverage under the policy would be guaranteed if the policyholder paid $41.27 per month. Accordingly, he argues, Defendants breached the policy by increasing the premiums and depleting the cash value of the policy to make up the difference. We have reviewed the policy and conclude that the district court correctly determined that, reading the policy as a whole, Defendants were permitted under the policy's terms to require Hancock to pay increased premiums if the cost of insurance became greater than the cash

3

value of the policy. The district court therefore correctly dismissed Hancock's claim for breach of contract.[*]

Hancock next contends that the district court should not have dismissed his claim for breach of the duty of good faith and fair dealing. In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything that injures the right of the other to receive the benefits of the agreement. *Bicycle Transit Auth., Inc. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985); *see Maglione v. Aegis Family Health Ctrs.*, 607 S.E.2d 286, 291 (N. C. Ct. App. 2005) ("[A] party who enters into an enforceable contract is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement.").

We agree with the district court that Hancock's allegations regarding breach of the duty of good faith and fair dealing are materially similar to those supporting his claim for breach of contract. Because the district court properly dismissed the breach of contract claim and Hancock did not adequately plead an independent claim for breach of the duty of good faith and fair dealing, the district court properly dismissed this claim.

Finally, Hancock argues that he pled an adequate claim for relief under the UDTPA.

> The UDTPA is meant to prevent unfair or deceptive acts or practices in or affecting commerce. In order to state a claim under the UDTPA, a plaintiff must show (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. Whether conduct is unfair or deceptive is a legal issue for the court to decide.

---

[*] As the district court correctly dismissed this claim, it also correctly dismissed the derivative claims for declaratory and injunctive relief and rescission.

*Ellis v. La.-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) (citations and internal quotation marks omitted). "North Carolina courts have repeatedly held that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UDTPA.]" *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 224 (4th Cir. 2009) (internal quotation marks omitted); *see Wells Fargo Bank, N.A. v. Corneal*, 767 S.E.2d 374, 377 (N.C. Ct. App. 2014) ("A UDTPA action is distinct from a breach of contract action; a plaintiff must allege and prove egregious or aggravating circumstances to prevail on a UDTPA claim."). Section 58-63-15 of the North Carolina Code defines unfair methods of competition and unfair or deceptive acts or practices relating to the business of insurance, and the North Carolina courts have held that violations of § 58-63-15 also constitute violations of the UDTPA. *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 396 (4th Cir. 2018). Having reviewed the pleadings, we agree with the district court that Hancock failed to state a UDTPA claim.

We therefore affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*